IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT
HOUSTON DIVISION

United States District Court
Southern District of Texas
FILED
MAY 11 2016
David J. Bradley, Clerk of Court

HENRY CHAVEZ, §
    Petitioner, §
v. § NO:
WILLIAMS, STEVENS, §
Director-TDCJ-CID §
    Respondent. §

## MEMORANDUM IN SUPPORT

COMES NOW, Petitioner, Henry Chavez, pro se, and respectfully tenders this Memorandum in Support. For the following reasons, Petitioner would assert that his writ should be GRANTED:

### STATEMENT OF EXHIBITS

A. Affidavit of Evelyn Smith.

B. Police Report of Officer Steve Davis.

C. Petitioner's Memorandum is Support(Original).

D. State's Original Answer.

E. Petitioner's Response to State's Original Answer

F. State's Proposed Findings of Fact and Conclusions of Law & Order Adopting the Same.

G. Petitioner's Proposed Findings of Fact and Conclusions of Law.

### Title 28 U.S.C.§2254

(d) An application for a writ of habeas corpus on behalf of a person in custody to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication on the claim

    (i) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law,

1

as determined by the Supreme Court of the United States, or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

See Also, **Williams v. Taylor**, 529 U.S 362, 402-03(2000). A decision is contrary to clearly established Federal law if it applies a rule that contradicts Supreme Court precedent. **Brown v Payton**, 554 U.S. 133, 141(2005). An unreasonable application of Federal law occurs when a State court applies Supreme Court precedent in an "objectively unreasonable manner." Id. at 141.

In addition, §2254(d)(2) provides that a State court decision must be reversed, and relief must be granted if the State court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The application of this standard was discussed in **Miller-El v. Cockrell**, 537 U.S. 322,340(2003)(-El 1).

> Factual determinations by State courts are presumed correct... Even in the context of federal habeas, deference does not imply abandonment of abdication of judicial review. Deference does not by definition preclude relief. A Federal court can disagree with a State court's credibility determination and, when guided by AEDPA conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence.

The State Court's finding of fact are reviewed for clear error and its conclusions of law de nova. Richardson v. Browersox, 188 F.3d 973, 977(8th Cir. 1999).

## I.
## THAT THE STATE WITHHELD EVIDENCE FAVORABLE TO PETITIONER IN VIOLATION OF BRADY V. MARYLAND AND THE FOURTEENTH AMENDMENT

Petitioner incorporates by reference herein his statement of the case as set forth in Original **Memorandum in Support**, see

2

Exhibit C., pp. 2-15(Jury Trial).

The fourteenth amendment imposes a duty of the State to disclose evidence favorable to the defendant. In **Brady v. Maryland**, 373 U.S. 83, 87(1963), the Supreme Court held that due process required the prosecution to disclose upon request evidence favorable to the accused when such evidence is material to guilt or punishment. "A **Brady** violation occurs when: (1) evidence if favorable to the accused because it is exculpatory or impeaching; (2) evidence was supressed by the State, either willfully or inadvertently; (3) [and] prejudice ensued." **Strickler v. Greene**, 527 U.S. 263, 281-82(1999).

Favorable evidence is "material" if there is a reasonable probability that the disclosure of the evidence would have changed the outcome of the proceedings. **U.S. v. Bagley**, 473 U.S 667, 682 (1985). "**Bagley's** touchstone of materiality is a 'reasonable probability' of a different result, and the adjective is important." **Kyles v. Whitley**, 514 U.S. 419, 434(1995). The **Kyles** Court made clear, "**Bagley** materiality...is not a sufficiency of the evidence test...A **Brady** violation [is established] by showing that the favorabl evidence could reasonably be taken to put the whole case in such a light as to undermine the confidence in the verdict." Id. at 435.

The Police report of Officer Steve Davis sets forth in relevent part: "In the trunk was one empty plastic shopping bag and two large carpeted boxes with stereo speakers mounted inside." See Exhibit B.

The State in the instant case does not deny that the report is material, nor that it is **Brady** material, but asserts: "Deputy

3

Davis did not testify in the primary case. It is unclear whether trial counsel received a copy of Supplement 4." See Exhibit D, at 4. But, the State correctly notes: "the supplement makes no mention of a shotgun being recovered while the vehicle was being processed for prints." Id. at 3.

The State asked the court to take comfort in the fact that the "defense theme was premised on bad police work" which did not prevail. Id. at 4. However, the **Brady** claim raised in the instant case takes aim not at the defense's theme, but that of the State. The State argued in closing: "Let him go because the police did a bad job...That car that was found, **Nobody ever openned the trunk**. What if there was a dead body in there, a kilo of cocaine? **Nobody openned the trunk**. The victim had to open the trunk to find the shotgun." (R.R. Vol. 3, at 59-60). **"The Big Old Shotgun."** Id. at 67.

The whole premise of the State's case was the shotgun entered into evidence was in fact the shotgun used in the alleged robbery, beginning with the State's openning statement, by and through Assistant District Attorney Mr. George Weissfisch, who recited the indictment to the jury in relevent part: "[A]nd the defendant [vicariously] did then and there use and exhibit a deadly weapon, to-wit: A firearm against the piece and dignity of the State." Id. at 7.

Further, the State solicited in their case and chief the following testimonies, starting with Harris County Sheriff's Deputy J.A. Whitley: "What evidence did you bring?" Response: "I brought the rifle or shotgun that was used in the crime." Id. at 24. And through the testimony of Harris County Sheriff's Deputy Carl S. Mueller: "Did you search the trunk?" Response: "No, Sir, I did not." And,

concluded with the alleged victim, Ronald Bell: "You found this shotgun that is marked State's Exhibit No. 1?" "Yes, I did." "In the back of your car?" "Yes, in the back of my trunk." Id. at 94-95.

The State would ask the Court to believe that had counsel been aware of this police report, the results of the proceedings would not have been different. State's proposed Conclusion of Law 1. See Exhibit F, at 3. Petitioner would assert that even the most incompetent of defense counsel would have recognized the significance of the report, and would have called Deputy Steve Davis as a defense witness to impeach the testimony of Ronald Bell and place into questi the very existence of the shotgun itself.

The firearm in question was tendered and admitted into evidence on the premise that it was in fact the firearm used in the commission of the aggravated robbery for which Petitioner was tried. The firearm, as the State's theory goes, was the essential element in the alleged aggravated robbery. Petitioner would assert, had counsel been aware of the report, the results of the proceedings would have been different. Not to mention, it is fundamentally unfair for the State to argue and present evidence that the trunk was not searched, when in fact it was, resulting in an inventory of the trunk that excluded the shoutgun which not coincidentially bared no fingerprint evidence.

Finally, all the remaining evidence introduced against Petition was suspect. From the identification of Petitioner to the lack of any other physical evidence against Petitioner including photos of the same. For a detailed argument of the evidence, see Exhibit C. at 2-12;Exhibit E. at 5-7.

5

The Supreme Court in **Brady** concluded, "[w]e now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution." **Brady**, supra at 373 U.S. 87.

In the instant case, the police report did both, absent the shotgun the jury could have found Petitioner not guilty of the aggravated assault, or could have found Petitioner guilty of the lesser included offense of robbery. Thus, the jury could set Petitioner free, or the jury could have sentenced Petitioner to a significant amount of lesser time.

Then as now, Petitioner maintains his innocence. See also, Exhibit E., Petitioner's Response to State's Original Answer, at 1-7; Exhibit C., Petitioner's Memorandum in Support, at 1-15.

II.

THAT THE STATE INTRODUCED FALSE EVIDENCE AT TRIAL IN VIOLATION OF PETITIONER'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF LAW

"[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fail under the fourteenth amendment. The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." **Napue v. Illinois**, 360 U.S. 264, 269(1959).

Petitioner would further assert that the introduction of the shotgun into evidence, and the solicitation of the testimony of Carl S. Mueller, rises to the level of constitutional error because it "'occur[ed] during the presentation of [the] case to the jury.'" **Brecht v. Abrahamson**, 507 U.S. 619, 630(1993)(citing Ari

6

sona v. Fulminate, 499 U.S. 279, 307(1991).

The State asserts "[t]he Applicant appears to suggest the Complaintant's testimony about discovering the shotgun in his vehicle was false...[though] [t]he Complaintant's testimony was consistent with his statements to Deputy R.A. Parker...[and] [Applicant's] [c]onclusory allegations, even sworn to, are not enough to warrant habeas relief." Exhibit E., at 6.

For whatever reason, the State totally misconstrues Petitioner's claim. It's not Bell's testimony, though suspect, that Petitioner complains of, but that of Officer Carl S. Mueller, as evidenced in Petitioner's pleading:

"[T]he State solicited the testimony of Officer Carl S. Mueller intentionally misleading the jury to believe that the trunk of Ronald Bell's vehicle was not openned or searched prior to being released back to Mr. Bell, having known, or should have known, that the evidence was false." Petition at 8-9.

Specifically, the state solicited from Officer Mueller, "Did you check the trunk?" To which Mueller testified, "No, Sir, I did not." And, "Why not?" "The vehicle was locked." And moments later, again, "You didn't check the trunk?..."(R.R. Vol. 3, at 62-63).

The fact remains, the trunk was indeed searched, and the contents therein chronicled and no shotgun was found. Where did the shotgun come from? That's the sixty-four thousand dollar question. Petitioner does not know, but the jury should not have been mislead into believing that the police had not searched the trunk prior to its release when in fact, beyond even the State's dispute, the police had.

7

The introduction of this false evidence, Petitioner would surmise, was for the sole purpose of bolstering the testimony of Ronald Bell and the alleged discovery of the shotgun, the shotgun supporting the State's theory of the case as evidenced by the testimony of Mr. Bell and the State's summation at closing. The State: "...nobody ever openned the trunk...Nobody openned the trunk." (R.R. Vol. 4, at 59-60). The State's theory: Therefore it must be the shotgun used in the robbery. And that is the conclusion that the State sought from the jury and the jury bought it, hook, line, and sinker.

The Supreme Court has long held, "...that a conviction obtained using knowingly perjured testimony violates due process." **Moone v. Holohan**, 294 U.S. 103, 112(1935).

Though the officer's testimony wasn't per se perjured, the distinction should be none, for the results are the same-the introduction of false evidence. The State doesn't deny the existence of Supplement 4, only that they didn't call Officer Steve Davis to testi And why did they choose to call Officer Mueller and opposed to Officer Davis? To Petitioner, the answer is obvious-Officer Davis' testimony would be in stark contrast to the testimony of the complainant, Mr. Robert Bell. The State could have called a string of officers to the stand to testify that the trunk wasn't searched, but that wouldn't make it any more true.

Ironically, the State through Mr. Bell's testimony unknowningly corroborated the police report as evidenced in the following exchange:

Q. At some point was your car found?

8

>   A. Yes it was.
>   Q. When was this?
>   A. I think about three or four days later.
>   Q. Okay. Three or four days later you went to get your car?
>   A. Yeah. They called me and told me they found it.
>   Q. It had been found before that, that's just the day you went?
>   A. Yeah. I went and looked at it.
>   Q. When you got there, did you bring your spare set of keys or did they have the keys or what?
>   A. No. I had the spare keys. Okay, because first it was in Humbl in  the Car Theft Division holding it. They were holding it.
>   Q. Right.
>   A. Yeah.
>   Q. So, where did you go to find your car? Where is it? What does it look like?
>   A. It was first in Humble. And they had it for fingerprinting. Once they they  finished that, they called and asked me where I wanted to take it to. And, I told them to take is to Land- mark Chevrolet.

(R.R. Vol. 3, at 93-94)

A reading of the police report indicates exactly that as testified to. That Mr. Bell brought his spare keys to 310 Fisher Rd., in Humble, so that his vehicle could be unlocked and processed. See Exhibit B.

Did the State not know of Officer Steve Davis' report? Petitioner feels it's unlikely, but, regardless, "...the prosecutor has a duty to investigate and disclose favorable evidence known only to the police, [and] he should know when a witness testifies falsely about such evidence." Kyles, supra, 514 U.S. at 438.

And as to Mr. Bell and the discovery of the shotgun, it's unlikely Mr. Bell carried a shotgun to Landmark Chevrolet to plant in his trunk, but not entirely improbable. Which begs the question; where did the shotgun come from? That's a question that the jury

9

should have gotten to decide.

In a conclusory fashion, the State says it wouldn't have made any difference had the defense been given the police report. In **Chapman v. California**, the Supreme Court held: "There is little, if any, difference between our statement in **Fahy v. Connecticut** about 'whether there is a reasonable probability that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our **Fahy** Case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." **Chapman**, 386 U.S. 18, 24(1967)(citations ommitted).

No doubt, the **Chapman** Court set a high hurdle holding,"[t]he State bears the burden of proving that an error passes mustard under this standard," **Brecht v. Abrahamson**, 507 U.S. 619, 630(1993), but that's the burden assigned to the State.

The introduction of the shotgun, the testimony surrounding it, and the State's arguments, tainted the entire trial. The shotgun was introduced as an essential element in the aggravated robbery for which Petitioner was tried and convicted. Had this false evidence not been introduced, the results of the proceedings would have been different, and the State has failed in proving otherwise. Petitioner is entitled to relief, and he respectfully asserts that his Writ of Habeas Corpus should be Granted even if the Court should hold

the State to the less onerous standard under **Brecht**, still Petitioner should prevail because the intorduction of this false evidence "'had substantial and injurous effect of influence in determing the jury's verdict.'" **Brecht**, at 507 U.S. 623.(citing **Kotteakos v. United States**, 328 U.S. 750, 776(1946). Also see, Exhibit C., at 8-9; Exhibit E, at 19-22.

### III.

### THE STATE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The State court adopted the State's Proposed Findings of Fact and Conclusions of Law without modification and did so irrespective of the record before it and Petitioner's pleadings. Finding #5:

> The Court finds that Ronald Bell, the complaining witness in the primary case, identified the Applicant as one of the two men who robbed him.

However, the finding is incomplete in that; Mr. Bell testified he identified Petitioner only "after" "The officer told me when he brought me up there, he told me that they found my wallet in the guy's truck on the seat," and "No, he's in the patrol car...[and he] presumed he was cuffed because he was in the back seat," and "I figured if he had my wallet, he was one of the guys."(R.R. Vol. 3, at 89, 92, 97). Thus, the bare finding is somewhat abridged and does not reflect the overly suggestive form of identification. Finding #8:

> The Court finds that Deputy Carl Mueller testified that when he recovered the vehicle, he did not open the trunk of the vehicle before having it transported to the Auto theft Division storage.

Petitioner has not qualms with this finding, and this testimony in fact supports Petitioner's second cause of action in that this is the false evidence that Petitioner complains of. Fact: The jury was mislead into believing that the trunk was never searched by the

11

by the police which we now know is false. Finding #9:

> The Court finds that the fourth supplement to the incident report in the primary case describes Deputy S.A. Davis processing the stolen vehilce for the prints on June 24, 2002, but does not reference any recovery of a weapon from the trunk of the complaining witness vehicle.

Likewise, Petitioner has no qualms with this finding for this finding supports both Petitioner's **Brady** claim and his false evidence claim. Finding #11:

> The Court finds that Ronald Bell, the complaining witness in the primary case, testified that he recovered a shotgun from his vehicle trunk when he reclaimed the vehicle on June 26, 2002.

And herein lies the heart of both claims. The jury was not afforded the testimony of Officer Steve Davis, the officer that did search the trunk and found no shotgun. The shotgun that the State alleged was used in the aggravated robbery for which Petitioner was convicted. The Petitioner and the jury had the right to hear this evidence for how else could the Petitioner confront the witnesses against him? And how else could the jury come to a reliable verdict?

As for the two conclusions of law, Petitioner wholely disagrees with both. The State does not deny the report was **Brady** material nor does the State deny that Petitioner didn't receive the report. Even under the less onerous standard set forth in **Brecht**, the State has not proven that both claims complained of herein did not "ha[ve] [a] substantial and injurous effect of influence" in the jury determi[ning] its verdict. **Brecht**, supra, 507 U.S. at 623.

And as for "Applicant's allegation of false testimony is conclusory and, insufficient to warrant habeas relief," there's nothing conclusory about the allegation. The State solicited the false testimony that the trunk was not searched by the police. The claim is

12

plain, simple, and true. Further the State compounded the violations by arguing in their closing, in their summation, that the police never searched the trunk. It's one thing introducing false evidence, and totally another arguing to the jury its significance. Petitioner's trial was fundamentally unfair and the verdict should not stand. Also see, Exhibit G., Petitioner's Proposed Findings of Fact and Conclusions of Law.

## IV.
## CONCLUSION

Petitioner would respectfully assert that either of his two claims, standing alone, entitles him to relief. The State does not deny Supplement 4 is **Brady** material, nor do they dipute how the evidence came into Petitioner's possession. Or whether counsel was provided with the Supplement. "It is unclear whether trial counsel received a copy of Supplement 4." Answer at 4. That simply doesn't suffice.

The fact remains that the supplement was material in more than one way. Not only was it impeaching, but it led to evidence that strikes at the heart of the aggravated robbery conviction for it calls into question the essential element of the aggravated robbery conviction. Due process "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." **United States v. Gaudin**, 515 U.S. 506, 510(1995). The State introduced the shotgun into evidence as the shotgun used in the alleged robbery. The shotgun the State so affectionately referred to as, **The Big Old Shotgun."**

Nor does the State claim they were unaware of the report. What the State fails to address, however, is why did they introduce evidence that the trunk was not searched when in fact it had? Yet the State would ask the Court to find the consitutioal errors complained of harmless. Petitioner would urge the Court not to do so.

Excluding the shotgun, no probative evidence remains. As for the pre-trial identification, "[s]uggestiveness may be created by the manner in which the pre-trial procedure is conducted, for example by the police pointing out the suspect or suggesting that a suspect is included in the line-up or photo array." **Barley v. State**, 906 S.W.2s 27, 34(Tex.Crim.App. 1995). "Furthermore, an individual procedure may be suggestive or the cumulative effect of the procedures may be suggestive." Id. at 33.

In the instant case, the police informed Mr. Bell that they had recovered his wallet from the suspect's truck prior to the identification. Then, the police had Mr. Bell view a cuffed Petitioner sitting in the back seat of a patrol car illuminated by headlights.

Could they have done a line-up, a photo array? They admitted they could, but that's not their policy.

In addition, none of the officer's reports, nor Bell's listed what the alleged robber was wearing that night, didn't recall either, but then rememebered self-servingly, the clothing description matched that given by Mr. Bell. As for Mr. Bell, he remembered the suspect as having worn blue jeans and a white T-shirt.

In stark contrast, the booking records showed Petitioner having worn a blue shirt, blue jean shorts, and a wave cap. As for a hat,

14

they all agreed there was none. The only accurate part of the description was of a Hispanic male, matching a quarter of Harris County population.

The Court need not be reminded that eye witness identification is inherently unreliable, as evidenced by the recent rash of exonerations, Harris County being only second to Dallas County in exonerations.

As for the truck, no photos of it were taken either, though the witnesses reluctantly admitted they could have taken pictures. The police testified in part that they identified the truck by its handicapped license plate, but Mr. Bell testified he knew nothing about handicapped plates. Notwithstanding, if it were in fact the tru that doesn't make Petitioner an accomplice in the robbery. Petitioner own actions, as testified to by the police, would lead to a different conclusion. Why would someone who had just committed a robbery stop within a 150 to 200 feet on an intersection crawling with police working an accident scene to get fuel-unlikely.

As for the wallet. What wallet? None was photographed or bagged though the witness admitted it could have been. Thus, no evidence of a wallet was entered into evidence, and in fact Mr. Bell couldn't even produce the wallet at trial.

Petitioner would submit, exclude the shotgun and there's little for the prosecution to hang their hat on. This case screams of injustice, and Petitioner's entitled to relief.

Finally, Petitioner has maintained his innocence from the inception and the "...courts retain the authority to issue the writ of habeas in a class of cases...implicating a fundamental mis-

carrage of justice." **Murray v. Carrier**, 407 U.S. 478, 485(1986). This is Such a case.

**WHEREFORE,** Petitioner would pray that his Petition for Writ of Habeas Corpus be **GRANTED**.

Respectfully submitted,

_/s/ Henry Chavez_ 5/10/2016
Henry Chavez #01160900

## VERIFICATION

I, Petitioner, Henry Chavez, pro se, do hereby verify that citations to the record are true and correct and that the accom-panying Exhibits are true and correct copies of the orginals. Signed under the penalty of perjury and pursuant to Title 28 U.S.C.§ 1746. This the 10 day of May, 2016.

_/s/ Henry Chavez_
Henry Chavez #01160900
Polunsky Unit
3872 FM 350 South
Livingston, TX 77351